In the Matter of the **MASON AND DIXON LINES, INCORPORATED**, Debtor.

**Bankruptcy No. B–84–00377 C–11.**

United States Bankruptcy Court, M.D. North Carolina.

Feb. 19, 1987.

See also, Bkrtcy., 65 B.R. 973.

William L. Stocks, Nichols, Caffrey, Hill, Evans & Murrelle, Greensboro, N.C., for Mason and Dixon Lines, Inc.

Deborah L. Hilderbran, Sp. Asst. U.S. Atty. of U.S. Atty's Office, Greensboro, N.C., for U.S.

## MEMORANDUM OPINION

RUFUS W. REYNOLDS, Bankruptcy Judge.

THIS MATTER COMING ON TO BE HEARD AND BEING HEARD before the undersigned United States Bankruptcy Judge presiding at the February 4, 1987 session of the United States Bankruptcy Court for the Middle District of North Carolina at Greensboro, North Carolina, at a hearing on the motion by the United States of America for an order requiring the debtor to begin making its plan payments to the United States pursuant to the debtor's confirmed Restated Joint Plan of Reorganization, as amended on February 5, 1986,[1] and to show cause why this Chapter 11 proceeding should not be dismissed or converted to Chapter 7. The debtor was represented by William L. Stocks of Greensboro, North Carolina, and the United States was represented by Special Assistant United States Attorney Deborah L. Hildebran of the United States Attorney's Office, Greensboro, North Carolina. After hearing oral arguments, the Court makes the following:

### FINDINGS OF FACT

1. A petition for reorganization pursuant to Chapter 11 of the Bankruptcy Code was filed on March 29, 1984, by The Mason and Dixon Lines, Incorporated.

2. On March 29, 1986, this Court confirmed the Restated Joint Plan of Reorganization, as amended on February 5, 1986, in this case.

3. The Restated Joint Plan of Reorganization, as amended, paragraph III.(B), provided that all expenses of administration, which includes federal taxes as incurred during the pendency of this proceeding, will be paid, in cash, in full on the effective date as defined by the plan.

4. The Restated Joint Plan of Reorganization, as amended, at paragraph V.1 states with regard to prepetition tax claims that:

> Class 1C claims shall not be impaired. The holders of allowed tax claims, if any, entitled to priority pursuant to 11 U.S.C. section 507(a)(6) [currently 507(a)(7)] shall be paid in cash on the Effective Date or, at the election of Mason/Dixon, treated in accordance with the provisions of 11 U.S.C. section 1129(a)(9)(C) over a period not exceeding six years after the date of assessment of such claim, the unpaid portion bearing interest at the average yield on six-month United States Treasury bills adjusted quarterly but in no event greater than ten (10%) percent annually.

5. There have been objections to claims of the United States which have been resolved and it is determined that the Proof of Claim for Internal Revenue Taxes, Form 6338, dated September 3, 1986, represents the prepetition claim of the United States against The Mason and Dixon Lines, Incorporated, which is in the amount of $1,755,141.82, of which $1,650,207.90 is a priority tax claim.

6. The Mason and Dixon Lines, Incorporated, is indebted to the United States for postpetition federal taxes as set forth on

---

1. This Court is vested with jurisdiction over this matter pursuant to Bankruptcy Code section 1142(b).

Form 6338–A, Internal Revenue Taxes (Bankruptcy Code Cases—Administrative Expenses), dated September 3, 1986, in the amount of $137,685.33 as of September 13, 1986, on which interest and penalties are accruing as provided by law.

7. It is the position of the debtor that the literal reading of section 1129(a)(9)(C) allows the debtor to determine how the United States is to be paid with regard to prepetition tax claims as long as the statutory requirement of section 1129(a)(9)(C) is met, i.e., "the holder of such claim will receive on account of such claim *deferred cash payments, over a period not exceeding six years after the date of assessment of such claim,* of a value as of the effective date of the plan, equal to the allowed amount of such claim." (Emphasis added) 11 U.S.C. section 1129(a)(9)(C). The debtor argues that the debtor can meet the statutory requirement by payment of interest only for six years with payment of all principal at the end of six years. Specifically, the debtor argues that the Bankruptcy Code and the debtor's plan of reorganization allow the debtor to pay the prepetition tax of the United States in the following manner: 5 annual payments in the amount of the yearly interest accrued on the claim to be paid on the anniversary date of the plan's confirmation, with a final payment on the anniversary date of the 6th year in the amount of the proof of claim figures and the yearly interest accrued thereon. The debtor argues that yearly "interest only" payments qualify as the "deferred cash payments" required by section 1129(a)(9)(C).

8. The position of the United States is that section 1129(a)(9)(C) requires with regard to prepetition tax claims, equal monthly payments plus interest to be made which reduce the amount of tax together with accrued interest, over a period of up to six years from the date of the assessment of the claim, or, in the event that the taxes have not been assessed as of the petition date, within six years from the date of confirmation.

9. The Court interprets section 1129(a)(9)(C) to require cash payments of principal in installments over a six-year period. The parties were unable to find case law which interpreted "deferred cash payments, over a period not exceeding six years" and neither could the Court. The Court feels that the lack of case law on the subject suggests that the meaning is so clear that it has not been litigated. The Court feels that "cash payments" means installments. Furthermore, the Court feels that installment payments should be spread over six years with 72 equal monthly payments of principal and interest absent exceptional circumstances.

Mason and Dixon's interpretation of the statute would place the debtor in an extremely favorable position and the Internal Revenue Service at great risk. The debtor would have a loan of the full principal for six years and the IRS would incur the risk of no payment of principal for the full six-year period. Congress would never have intended to be that generous with the taxpayer.

This Court has routinely interpreted section 1129(a)(9)(C) to require 72 equal monthly payments. There appears to be no reason to change this policy or interpretation.

10. The United States did not object to the plan because of the usual and customary interpretation and existing practice in this district with respect to the payment of prepetition tax claims when the plan of reorganization utilizes the general language of section 1129(a)(9)(C).

11. The Court, in confirming the plan, contemplated that the payments of the prepetition federal tax claim would be in equal monthly payments including interest over the period of time specified in the plan.

12. Any conclusion of law, which should more appropriately or additionally be denominated as a Finding of Fact, is incorporated herein by reference as if fully set forth.

### CONCLUSIONS OF LAW

13. This Court interprets paragraph V.1 of the Restated Joint Plan of Reorganization, as amended, as it relates to class 1C

as requiring the debtor to pay the United States' prepetition priority tax claim, currently outstanding in the amount of $1,650,207.90 in 72 equal monthly payments plus interest.

 14. Furthermore, the "deferred cash payments" in Bankruptcy Code section 1129(a)(9)(C)[2] means periodic payments, the interval of which is determined by balancing the circumstances of the debtor with the reasonable right of the creditor to receive prompt payment of its claim. Since the normal repayment schedule for a loan is monthly and monthly payments are routinely expected in this District, considering all the facts and circumstances in this case, there are no special or unusual facts which would constitute grounds to vary the normal payment interval. Therefore, in this case, the Court determines that a reasonable interval is monthly.

15. Case law supports that the United States' position is that of making a forced loan to the debtor. *See Architectural Design, Inc. v. Internal Revenue Service,* 59 B.R. 1019 (W.D.Va.1986); *In the Matter of Fi-Hi Pizza, Inc.,* 40 B.R. 258 (Bankr.D. Mass.1984).

16. Since no payments have been made to the United States since the confirmation of this Restated Joint Plan of Reorganization, as amended, the debtor should on or before February 27, 1987, pay the United States $252,115.09 plus interest as provided in the plan for 11 months without payment since confirmation of the plan March 29, 1986, and will continue payment of $22,919.54 plus interest per month on the last day of each month thereafter until payment of the United States' prepetition claim is paid in full.

17. No payments have been made by the debtor with regard to the United States' administrative tax claim and such claim should have been paid in full within ten days of confirmation of the plan. The debtor should pay the United States $149,927.79 on February 27, 1987, which will fully satisfy such claim.

18. If these payments as above mentioned should not be paid by the said date, a further hearing will be held as to the dismissal or conversion of this case.

Let an order be entered in accordance with this Memorandum Opinion.

---

**2.** Bankruptcy Code section 1129(a)(9)(C) provides that:

[W]ith respect to a claim of a kind specified in section 507(a)(6) of this title, the holder of such claim will receive on account of such claim deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the effective date of the plan, equal to the allowed amount of such claim.